GEOFFREY HANSEN
Acting Federal Public Defender
Northern District of California
HANNI M. FAKHOURY
Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Telephone:   (510) 637-3500
Facsimile:   (510) 637-3507
Email:       Hanni_Fakhoury@fd.org

Attorneys for TREVOR VEE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>TREVOR VEE,<br><br>  Defendant. | **Case No.:** CR 20-360-YGR<br><br>**DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE**<br><br>**Court:**         Courtroom 1, 4th Floor<br>**Hearing Date:** March 25, 2021<br>**Hearing Time:** 10:30 a.m. |

## INTRODUCTION

No one would envy the life Mr. Vee has lived. The child of a drug addict, a ward of the state at 11, and sentenced to prison for the first time at the age of 19, Mr. Vee simply never had a chance. His chaotic and traumatic upbringing predictably steered him to where he is today, awaiting sentencing in a federal criminal case, with the unpredicted twist of a global pandemic to make the situation somehow worse.

Given his horrific upbringing, mental health struggles, drug addiction, and the fact of the pandemic that had made incarceration more difficult than it would be otherwise, he asks this Court to grant a downward variance in this case and sentence him to 12 months and 1 day in custody, followed by three years of supervised release.

## STATEMENT OF FACTS

A.  **Mr. Vee's History and Characteristics.**

Mr. Vee was born in Martinez in 1988. Presentence Investigation Report ("PSR") ¶ 53. He never knew his biological father. His mother was a drug addict and after Mr. Vee was born, took him with her to Colorado to live with a boyfriend. When Mr. Vee was 5 years old, his mother returned to the Bay Area but she struggled to care for Mr. Vee. PSR ¶ 55. The family did not have food or a place to stay. He witnessed violence and saw one of his mother's boyfriends killed right in front of him on the street. *Id.*

At about 6 years old, Mr. Vee was sent to live with Teo'filo Vee, who previously had a relationship with his mother. Mr. Vee lived with Teo'filo, Teo'filo's wife and Teo'filo's son, Tavis, who is Mr. Vee's paternal half-brother. Although there was more stability in Teo'filo's house, Mr. Vee was a troubled child given his difficult upbringing. When he was 11 years old, Mr. Vee threatened to commit suicide and Teo'filo's wife called police resulting in Mr. Vee being admitted to John George Psychiatric Pavilion in San Leandro on a 5150 hold. There, at the age of 11, he was diagnosed as developmentally disabled and suffering from post-traumatic stress disorder. After he was cleared to be discharged, Teo'filo's wife did not want him back in the home, so Mr. Vee was placed in foster care until he turned 18. He did not like living in group homes, were there was violence, and he constantly ran away. PSR ¶ 56. He lived on the streets, watched friends die to gun

violence in Richmond and Oakland, and was himself pistol-whipped. PSR ¶ 58.

Unsurprisingly, he used drugs as way to escape his miserable life. He began smoking marijuana at the age of 10, using ecstasy at 14, and by the age of 18, was abusing cocaine and methamphetamine almost every day. PSR ¶ 67. With drug use came criminal activity and the revolving door of jail and prison. Mr. Vee's mental health struggles were serious enough that in late 2013 he was sent to Atascadero State Hospital, where he was diagnosed with Bipolar Disorder II. PSR ¶ 65. Outside of custodial settings, he has never received drug or mental health treatment and counseling.

**B.     The Nature and Circumstances of the Offense and Court Proceedings**

On January 8, 2020, parole officers conducting a field visit at Mr. Vee trailer in Oakland found a shotgun in his trailer. PSR ¶¶ 7-12. Mr. Vee was arrested and given a 180 day jail sentence for violating his parole terms.

On May 13, 2020, Mr. Vee was charged in a federal criminal complaint with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). He made his initial appearance in federal court on September 10, 2020 and on September 22, 2020 a one-count indictment was filed charging Mr. Vee with the same crime. He waived his right to a detention hearing on October 2, 2020, and indicated his intent to enter an open guilty plea without a plea agreement.

In between his release from custody on the parole violation and his initial appearance in federal court, Mr. Vee was not arrested for or convicted of any criminal conduct.

**C.     Mr. Vee's Future Rehabilitation Goals and Plans.**

Today, Mr. Vee is anxiously sitting in jail during a global pandemic. He is tired of the revolving door of jail and prison and is looking forward to participating in drug and mental health treatment and counseling when released from custody and placed on supervised release. *See* PSR ¶¶ 66-67.

## SENTENCING ARGUMENT

Criminal "punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949). That requires "the sentencing judge to consider every convicted

person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 52 (2007) (quotations omitted). The factors detailed in 18 U.S.C. § 3553(a) assist the Court in fulfilling this mandate to make "an individualized assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime." *United States v. Barker*, 771 F.2d 1362, 1365 (9th Cir. 1985). The sentence recommended in the U.S. Sentencing Guidelines ("U.S.S.G.") is only one factor for district courts to consider in making this judgment, and it may not be weighed more heavily than any other § 3553(a) factor. *Gall*, 552 U.S. at 50; *see also United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc).

Mr. Vee respectfully asks this Court to sentence him to 12 months and 1 day of custody, followed by three years of supervised release.

A.  **Seriousness of the Offense, Respect for the Law and Just Punishment.**

The Supreme Court has explained the factors in § 3553(a)(2)(A)—the seriousness of the offense," the need "to promote respect for the law" and "provide just punishment for the offense"—are the sentencing rationale of "retribution." *See Tapia v. United States*, 564 U.S. 319, 326 (2011) ("a court may not take account of retribution (the first purpose listed in 3553(a)(2)) when imposing a term of supervised release") (emphasis omitted). "The goal of retribution" is the "interest[] in seeing that the offender is repaid for the hurt he caused." *Kennedy v. Louisiana*, 554 U.S. 407, 442 (2008). Yet, the Supreme Court has warned "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall*, 552 U.S. at 54 (quotations omitted).

The "real conduct and circumstances" in this case include Mr. Vee's traumatic and chaotic upbringing and lengthy struggle with drug addiction and mental illness, which played a significant role in bringing him before the Court for sentencing.

Trauma during childhood creates higher risks for negative outcomes in life, including health

and life opportunities.[1]  Supportive and nurturing relationships and environments for children and families are at the "heart of prevention" for children with trauma history.  *Id*.  Mr. Vee certainly did not have that kind of childhood. He was surrounded by drug abuse and violence at a young age, lived in group homes for most of his adolescence, and began abusing drugs at the age of 10, including daily methamphetamine use from the age of 18. PSR ¶ 67.

It is thus unsurprising that Mr. Vee has found himself incarcerated. There can be no question that Mr. Vee's mental health conditions, caused by his traumatic past and exacerbated by drug abuse, contributed to his poor judgment in this case.  As experts told the *New York Times*, "in a justice system built upon the idea of choice and personal responsibility, experts say the path to trouble may begin long before an individual has any say in the matter. What happens to people in childhood can make a difference in whether they end up in a prison cell, or whether they are even wired to make rational decisions."[2] It is often repeated by prosecutors that childhood trauma is not an excuse for an adult's behavior, dismissing years of neglect inflicted upon a helpless child because a grown man has had plenty of time to decide what type of adult he should be.  However, childhood trauma does not have an expiration date.  Indeed, as one Cornell University sociologist told the *New York Times,* trauma is a major factor "that shapes addictive and criminal behavior in adulthood" and is a "huge factor within the criminal justice system."[3] As a doctor with the Centers for Disease Control elaborated, "children's adverse experiences are a public health problem" as "childhood adversity and stress can chemically change the way our brains work."[4]  Thus, Mr. Vee's childhood trauma shaped his adulthood and continues to impact him every day of his life.  While Mr. Vee accepts responsibility for the mistakes that he alone caused, any sentence must take his childhood adversity into account.

---

[1] *See* Rhitu Chatterjee, "CDC: Childhood Trauma is a Public Health Issue and We Can Do More to Prevent It," *National Public Radio*, Nov., 2019, https://www.npr.org/sections/health-shots/2019/11/05/776550377/cdc-childhood-trauma-is-a-public-health-issue-and-we-can-do-more-prevent-it.

[2] *See* Audra Burch, "A Gun to His Head as a Child. In Prison as an Adult." *New York Times*, Oct. 15, 2017, https://www.nytimes.com/2017/10/15/us/childhood-trauma-prison-addiction.html.

[3] *Id.*

[4] *Id.*

Moreover, in determining a "just punishment," the Court must also consider how Mr. Vee has and will continue to serve his time in jail during the COVID-19 pandemic. Even in the best of times, prisons and jails have "long been known to be associated with high transmission probabilities of infectious diseases."[5] Incarcerated individuals "are at special risk of infection" and "infection control is challenging."[6] Prisons and jails "contain high concentrations of people in close proximity and are breeding grounds for uncontrolled transmission [of infection]."[7] Incarcerated individuals share bathrooms, sinks, and showers. They eat together, and sleep in close proximity to each other. They often lack access to basic hygiene items, much less the ability to regularly disinfect their living quarters. "The conditions and reality of incarceration makes prisons and jails tinderboxes for the spread of disease."[8] In short, "our jails are petri dishes."[9]

But this is not the best of times. COVID-19 has upended prisons and jails across the country, including both the Santa Rita jail—where Mr. Vee has been held since September 2020—and the BOP, where Mr. Vee will serve any prison sentence imposed by the Court. One study has found that the COVID-19 confirmed case rate in prison is 3.7 times higher than the national rate, and the death rate was two times the number expected given mortality among individuals of a similar age, gender,

---

[5] Letter from Patricia Davidson, Dean, Johns Hopkins School of Nursing, *et al.,* to Hon. Larry Hogan, Governor of Maryland, Mar. 25, 2020, https://bioethics.jhu.edu/wp-content/uploads/2019/10/Johns-Hopkins-faculty-letter-on-COVID-19-jails-and-prisons.pdf (co-signed by over 200 faculty members of Johns Hopkins Bloomberg School of Public Heath, School of Nursing, and School of Medicine).

[6] Open Letter from Gregg S. Gonsalves, Assistant Professor, Department of Epidemiology of Microbial Diseases, Yale School of Public Health, *et al.* to Vice President Mike Pence and Other Federal, State and Local Leaders, Mar. 2, 2020, https://law.yale.edu/sites/default/files/area/center/ghjp/documents/final_covid-19_letter_from_public_health_and_legal_experts.pdf (co-signed by 814 experts in public health, law and human rights).

[7] Letter from Dr. Sandro Galea, Dean, Boston University School of Public Health, *et al.*, to President Trump, Mar. 27, 2020, https://thejusticecollaborative.com/wp-content/uploads/2020/03/Public-Health-Expert-Letter-to-Trump.pdf (co-signed by numerous public health officials from leading medical and public health institutions).

[8] Kimberly Kindy, "An Explosion of Coronavirus Cases Cripples Federal Prison in Louisiana," *Washington Post*, Mar. 29, 2020, https://www.washingtonpost.com/national/an-explosion-of-coronavirus-cases-cripples-a-federal-prison-in-louisiana/2020/03/29/75a465c0-71d5-11ea-85cb-8670579b863d_story.html.

[9] Timothy Williams *et al.*, "'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars," *New York Times*, Mar. 30, 2020, https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html.

and race.[10] In an effort to control the spread of the disease, both Santa Rita and the BOP have held inmates under lockdown conditions similar to solitary confinement. Because COVID-19 has made the time Mr. Vee has served—and will continue to serve—more severe than it would be otherwise, a variance from the Guideline range is warranted.

### B.   Deterring Criminal Conduct and Protecting the Public.

A 12 month and 1 day sentence will deter Mr. Vee from possessing a firearm again. Mr. Vee accepts he made a mistake that requires punishment, but the time he has spent in custody—under more restrictive conditions during a pandemic—has been enough to deter him from picking up a firearm again. As for protecting the public, getting Mr. Vee on supervised release and into intensive drug and mental health treatment sooner rather than later will be more effective at protecting the public than a prison sentence longer than 12 months and 1 day.

### C.   Providing Training, Medical Care or Other Treatment.

"The underlying purposes of sentencing include not only punishment and deterrence, but also the provision of treatment to a defendant in need of it." *United States v. Bad Marriage*, 392 F.3d 1103, 1114 (9th Cir. 2004) (citing 18 U.S.C. § 3553(a)(2)(D)). Congress has cautioned courts to recognize that "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). Indeed, the Supreme Court has explained a district court cannot increase the length of a sentence in order to provide a defendant with rehabilitative services, and a court determining the length of a prison sentence "should consider the specified rationales of punishment *except for* rehabilitation, which it should acknowledge as an unsuitable justification for a prison term." *Tapia*, 564 U.S. at 327 (emphasis in original).

Mr. Vee is bipolar and suffers from PTSD and schizophrenia. PSR ¶ 65. He has abused drugs since he was 10 years old and will need drug and mental health counseling. PSR ¶ 67. Mr. Vee plans to participate in the treatment programs available to him in the BOP, but if given a Guideline sentence there will likely not be enough time to complete RDAP. So the harder and more necessary

---

[10] *See* National Commission on COVID-19 and Criminal Justice, "COVID-19 in U.S. State and Federal Prisons, December 2020 Update," at 3, *available at* https://cdn.ymaws.com/counciloncj.org/resource/resmgr/covid_commission/COVID-19_in_State_and_Federa.pdf.

treatment for Mr. Vee will come when he is out of custody. That is why "Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000) (citing 18 U.S.C. § 3553(a)(2)(D)). Thus, placing Mr. Vee onto supervised release after 12 months and 1 day—and into mental health counseling and drug treatment—will be more effective at ensuring he is not a danger to the public than a longer prison sentence.

### D. The Guidelines Sentencing Range.

Mr. Vee agrees with the Guideline calculations in the PSR. The base offense level is 14 under U.S.S.G. § 2K2.1(a)(6)(A) because Mr. Vee is a convicted felon. PSR ¶ 14. Because he intends to plead guilty, a two level downward adjustment for acceptance of responsibility applies under U.S.S.G. § 3E1.1(a). PSR ¶ 24. The adjusted offense level is therefore 12. PSR ¶ 25. Mr. Vee is in criminal history category V. PSR ¶ 36. The advisory Guideline range is therefore 27-33 months. PSR ¶ 77.

But this Guideline range only takes into account the aggravating factors in Mr. Vee's case. The range says nothing about Mr. Vee's chaotic upbringing, struggle with drug addiction and mental illness, or the pandemic, which has made Mr. Vee's time in custody harder than it would have been otherwise, and places him at a significant risk of getting sick with COVID-19. As suggested by the probation office, a "sentence below the Guideline range may be warranted due to the defendant's long history of substance abuse, trauma, and lack of parental guidance." PSR ¶ 94.

### E. Avoiding Unwarranted Sentencing Disparities.

While the Court must avoid unwarranted sentencing disparities among defendants with similar records convicted of similar conduct, the Ninth Circuit has explained sentencing courts must also "avoid 'unwarranted similarities among [defendants] who were not similarly situated.'" *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1058 (9th Cir. 2009) (quoting *Gall*, 552 U.S. at 55 (emphasis and brackets in original)); *see also* 18 U.S.C. § 3553(a)(6).

A 12 month and 1 day sentence ensures Mr. Vee is not unfairly equated with a defendant who actually possessed, brandished or discharged a firearm during a crime of violence or drug trafficking offense, possessed a firearm with a high capacity magazine, or possessed the firearm in connection

with other felony conduct  Such a sentence also takes into account Mr. Vee's chaotic upbringing, his drug addiction and mental health struggles.  Finally, a 12 month and 1 day sentence ensures Mr. Vee is not equated to a defendant going through the federal criminal justice system *before* the pandemic, when there was greater movement and programming opportunities in custody, and no possibility of catching a once in a century life-threatening illness while incarcerated.

## CONCLUSION

Mr. Vee respectfully requests this Court sentence him to 12 months and 1 day in custody, followed by three years of supervised release.

Dated:    March 18, 2021                              Respectfully submitted,

GEOFFREY HANSEN
Acting Federal Public Defender

           /S
HANNI M. FAKHOURY
Assistant Federal Public Defender